*573 OPINION OF THE COURT
Burton S. Sherman, J.
In this nonjury action, the plaintiff buyer seeks damages from the seller for loss of a shipment in transit. The issue is whether under the law of sales the buyer or the seller shall bear the risk and suffer the loss.
Section 2-509 of the Uniform Commercial Code states:
"(1) Where the contract requires or authorizes the seller to ship the goods by carrier
"(a) if it does not require him to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier * * *
"(b) if it does require him to deliver them at a particular destination and the goods are there duly tendered * * * the risk of loss passes to the buyer when the goods are there duly so tendered”.
Since the goods were lost in transit, the first question to be determined is whether the sales contract provided for delivery to the carrier or to a particular destination.
Section 2-504 of the Uniform Commercial Code states:
"Where the seller is required or authorized to send the goods to the buyer and the contract does not require him to deliver them at a particular destination, then unless otherwise agreed he must
"(a) put the goods in the possession of such a carrier and make such a contract for their transportation as may be reasonable having regard to the nature of the goods and other circumstances of the case”.
Therefore the second question for determination is, assuming the sales contract required delivery to a carrier, did the seller breach the agreement by failing to enter into a reasonable contract with the carrier for their delivery to the buyer.
The plaintiff buyer, appearing pro se, is a student at the Massachusetts Institute of Technology. He helped defray the cost of his education by selling pocket calculators to his fellow students. He purchased 23 calculators by telephone from the defendant in New York. United Parcel was the defendant’s usual carrier. Because United Parcel was on strike, the defendant was reluctant to sell. However, he finally agreed, at a prepaid price of $2,744. It was left to the defendant’s discretion as to the manner of shipment and selection of the carrier to be used in the event the strike was not quickly settled. *574 However, in his payment letter, plaintiff stated in part: "Also, please find endorsed a blank check to cover postage. This is a special account set aside for this purpose and has only about $50.00. Please ship this to my residence address if you will, as this is easier for me. General correspondence can be addressed to either my business address (above) or my residence (below)”.
Thereafter, the defendant packed the calculators in two cartons. The labels on the sides of the cartons clearly proclaimed their contents. They were then delivered to the United States Post Office and sent to the plaintiff by fourth class mail. Although the sales price was $2,744, the defendant only insured each carton for $200. The cost of the postage and insurance was $9.98, well below the $50 limit the plaintiff had authorized the defendant to spend for the cost of shipping. The postal rates, submitted as an exhibit on consent, indicate that to insure both of the cartons for their full value would have cost $16.26 which was also below the $50 authorization. One carton was received by the plaintiff and the other lost in shipment. The value of the lost carton was $1,663. The plaintiff never received the $200 insurance payment for the lost carton although the defendant processed such claim. There was also testimony, and the court finds as a fact, that the defendant, Flor Perez, mistakenly addressed one of the cartons and sent it to another State.
As to the first question, the facts indicate that choice of a carrier was an important element of the agreement and it is clearly some indication that it was intended that delivery be made to a carrier rather than to a destination. This is further supported by the fact that shipping costs were advanced by the plaintiff and the term "postage” was used in his letter. This could be and is construed as a direction to deliver to the United States Postal Service. Delivery was, in fact, made to the post office. Under the Uniform Commercial Code, the sales contract which provides for delivery to a carrier is considered the usual one and delivery to a particular destination to a buyer the variant or unusual one. (Uniform Commercial Code, § 2-503, official comment 5; 51 NY Jur, Sales, § 102, p 42; Dana Debs, Inc. v Lady Rose Stores, 65 Misc 2d 697.) In view of the foregoing, the request of the plaintiff’s letter to ship to his residence is insufficient to convert the contract into one requiring delivery to a destination rather than one to a carrier. The request was nothing more than a shipping in *575 struction and not of sufficient weight and solemnity as to convert the agreement into a destination contract (Metropolitan Distr. v Eastern Supply Co., 21 Pa D & C 2d 128). It is concluded that the sale required delivery to a carrier and the risk of shipment was therefore placed on the plaintiff buyer.
As to the second question, it is undisputed that the calculators were not insured for their full value with the post office although sufficient funds were advanced for this purpose. "It is an improper contract under paragraph (a) for the seller to agree with the carrier to a limited valuation below the true value and thus cut off the buyer’s opportunity to recover from the carrier in the event of loss, when the risk of shipment is placed on the buyer” (Uniform Commercial Code, § 2-504, official comment 3; also, Miller v Harvey, 221 NY 54; Lopez v Henry Issacs, Inc., 210 App Div 601). By only insuring the cartons for $200 each, the seller entered into an improper transportation contract with the carrier (Uniform Commercial Code, § 2-504, subd [a]). Beside this, the failure of the seller to properly insure was compounded by misaddressing the carton, by theft-tempting packaging; and by shipping by fourth class mail. (Cf. Dickey v Grant, 6 Cow 309; Madeirense Do Brasil S/A v Stulman-Emrick Lbr. Co., 147 F2d 399.) It is, therefore, concluded that the seller breached the contract of sale and the plaintiff suffered damages of $1,663.
Accordingly, judgment shall be entered for the plaintiff in the sum of $1,663 with interest from November 15, 1976.