COOK SPECIALTY COMPANY

v.

**Randolph SCHRLOCK, a/k/a Randolph Scurlock, R.T.L. Lines, Inc., Machinery Systems International, Ltd.**

Civ. A. No. 90–0366.

United States District Court,
E.D. Pennsylvania.

Sept. 25, 1991.

Harris B. Savin, Philadelphia, Pa., for plaintiff.

Kevin W. Lynch, Philadelphia, Pa., for defendants.

## MEMORANDUM

WALDMAN, District Judge.

Defendant Machinery Systems, Inc. ("MSI") contracted to sell plaintiff a machine known as a Dries & Krump Hydraulic Press Brake. When the machine was lost in transit, plaintiff sued defendants to recover for the loss. Presently before the court is plaintiff's Motion for Summary Judgment and defendant MSI's Cross–Motion for Summary Judgment.

## I. LEGAL STANDARD

In considering a motion for summary judgment, the court must consider whether the pleadings, depositions, answers to interrogatories and admissions on file, together

with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Arnold Pontiac–GMC, Inc. v. General Motors Corporation*, 786 F.2d 564, 568 (3d Cir.1986); only facts that may affect the outcome of a case under applicable law are "material." *Anderson, supra* 477 U.S. at 248, 106 S.Ct. at 2510. All reasonable inferences from the record must be drawn in favor of the non-movant. *Anderson, supra* at 255, 106 S.Ct. at 2513. Although the movant has the initial burden of demonstrating an absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. *J.F. Feeser, Inc. v. Serv–A–Portion*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied* — U.S. ——, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991), (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

## II. FACTS

The pertinent facts are not contested and are as follow.

Plaintiff entered into a sales contract with defendant MSI for the purchase of a Dries & Krump Press Brake in August of 1989 for $28,000. The terms of the contract were F.O.B. MSI's warehouse in Schaumburg, Illinois. Defendant R.T.L., also known as Randy's Truck Lines, ("the carrier") was used to deliver the press brake from the defendant's warehouse to the plaintiff in Pennsylvania. MSI obtained a certificate of insurance from the carrier with a face amount of $100,000 and showing a $2,500 deductible (*See* dfdt. ex. D.)

On October 20, 1989, the carrier took possession of the press brake at MSI's warehouse. While still in transit, the press brake fell from the carrier's truck. The carrier was cited by the Illinois State Police

for not properly securing the load. Plaintiff has recovered damages of $5,000 from the carrier's insurer, the applicable policy limit for this particular incident. The machine was worth $28,000.[1]

## III. DISCUSSION

This dispute is governed by the Uniform Commercial Code ("UCC") provisions regarding risk of loss. The parties agree that there is no meaningful distinction between the pertinent law of Pennsylvania and Illinois, both of which have adopted the UCC.

The term "F.O.B., place of shipment," means that "the seller must at that place ship the goods in the manner provided in this Article (section 2–504) and bear the expense and risk of putting them into the possession of the carrier." 13 Pa.C.S.A. § 2319. Thus, MSI bore the expense and risk of putting the machine into the carrier's possession for delivery. At the time the carrier takes possession, the risk of loss shifts to the buyer. The UCC provides:

> Where the contract requires or authorizes the seller to ship the goods by carrier
>
> a) if it does not require him to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier....

13 Pa.C.S.A. § 2509.

Goods are not "duly delivered" under § 2–509, however, unless a contract is entered which satisfies the provisions of Section 2–504. *See* 13 Pa.C.S.A. § 2509, Official Comment 2. Section 2–504, entitled "Shipment by Seller" provides that:

> Where the seller is required or authorized to send the goods to the buyer and the contract does not require him to deliver them at a particular destination, then unless otherwise agreed he must
>
> a) put the goods in the possession of such a carrier and make such a contract

---

**1.** Plaintiff, who also sued for certain consequential damages, asserts a claim for a total of $81,- 000.

for their transportation *as may be reasonable having regard to the nature of the goods* and other circumstances of the case.

13 Pa.C.S.A. § 2504 (emphasis added).

Plaintiff argues that the contract MSI made for the delivery of the press brake was not reasonable because defendant failed to ensure that the carrier had sufficient insurance coverage to compensate plaintiff for a loss in transit. Plaintiff thus argues that the press brake was never duly delivered to a carrier within the meaning of section 2–509 and accordingly the risk of loss never passed to plaintiff.

Plaintiff relies on two cases. In the first, *La Casse v. Blaustein*, 93 Misc.2d 572, 403 N.Y.S.2d 440 (Civ.Ct.1978), the defendant seller shipped calculators to the plaintiff buyer, a college student, in two cartons by fourth class mail. The buyer authorized the seller to spend up to $50 for shipping and insurance. The seller spent only $9.98 and insured each carton, valued at $1663, for $200. The seller wrongly addressed one of the cartons, and inscribed a theft-tempting notation on it. The New York County Civil Court held that the defendant had improperly arranged for transportation of the calculators.

*La Casse* is the only reported case which suggests that a seller's failure to obtain adequate insurance may breach his duty to make a reasonable contract for shipment under § 2–504. The dearth of support for plaintiff's position is instructive. A leading UCC authority has remarked: "Under this subsection [§ 2–504], what constitutes an 'unreasonable' contract of transportation? *Egregious* cases do arise." *See* J. White and R. Summers, *Uniform Commercial Code* § 5–2 (1988). The only such "egregious case" identified by White and Summers is *La Casse*, where "the package was underinsured, misaddressed, shipped by fourth class mail, and bore a 'theft-tempting' inscription." White and Summers, *supra*, at § 5–2.

The actions taken by the defendant in *La Casse* were utterly reckless. Moreover, unlike the defendant in that case, MSI did not undertake the responsibility to insure the shipment, and did not ship the press brake at a lower cost than the plaintiff expressly authorized it to pay.

Plaintiff also relies on *Miller v. Harvey*, 221 N.Y. 57, 116 N.E. 781 (1917). This pre-Code case is inapplicable. In *Miller*, by failing to declare the actual value of goods shipped on a form provided for that purpose, the seller effectively contracted away the buyer's rights against the carrier. Official Comment 3 to section 2–504 states:

■t is an improper contract under paragraph (a) for the seller to agree with the carrier to a limited valuation below the true value and thus cut off the buyer's opportunity to recover from the carrier in the event of loss, when the risk of shipment is placed on the buyer.

■ Thus, a contract is improper if the seller agrees to an inadequate valuation of the shipment and thereby extinguishes the buyer's opportunity to recover from the carrier. That is quite different from a seller's failure to ensure that a carrier has sufficient insurance to cover a particular potential loss, in which case the carrier is still liable to the buyer.

Plaintiff's focus on a single sentence of Official Comment 3 ignores the explicit language of the statute which defines reasonable in the context of "having regard to the nature of the goods," 13 Pa.C.S.A. § 2504, and the portion of the Comment which states:

Whether or not the shipment is at the buyer's expense the seller must see to any arrangements, *reasonable in the circumstances*, such as refrigeration, watering of live stock, protection against cold ... and the like....

*Id.*, Official Comment 3.

■ The clear implication is that the reasonableness of a shipper's conduct under § 2–504 is determined with regard to the mode of transport selected. It would be unreasonable, for example, to send perishables without refrigeration. *See Larsen v. A.C. Carpenter, Inc.*, 620 F.Supp. 1084, 1119 (E.D.N.Y.1985). No inference fairly can be drawn from the section that a seller

has an obligation to investigate the amount and terms of insurance held by the carrier.

The court finds as a matter of law that MSI's conduct was not unreasonable under section 2–504. MSI obtained from the carrier a certificate of insurance and did nothing to impair plaintiff's right to recover for any loss from the carrier.[2] Accidents occur in transit. For this reason, the UCC has specifically established mercantile symbols which delineate the risk of loss in a transaction so that the appropriate party might obtain insurance on the shipment. The contract in this case was "F.O.B." seller's warehouse. Plaintiff clearly bears the risk of loss in transit.

There are no material facts in dispute and MSI is entitled to judgment as a matter of law.

---

**2.** Plaintiff's argument that because the carrier used an allegedly unprofessional sounding name, Randy's Truck Line, and inelegant stationary, MSI was on notice that the carrier was unreliable is untenable. The Philadelphia telephone directory alone lists dozens of moving companies bearing the name, often just the first name, of an individual. Moreover, plaintiff has made no showing that the carrier, which is a party defendant, does not in fact have the means to satisfy a judgment in the amount sought.